Thank you, Your Honor. I'd like to reserve three minutes for rebuttal, if I may. Sure. My name is Scott Engelhardt. I represent Omar Lopez-Castillo. The issue before the Court is the application of the equitable tolling doctrine to determine whether my client's habeas corpus petition should be allowed to go forward despite the petition being filed beyond the one-year statute of limitations for AEDPA. And you're asking for three-and-a-half years, is that right? Your Honor, I think there's various ways to calculate that, but certainly there has been... There should be only one answer to the question of how much time, right? Aren't we in agreement on the date that the AEDPA clock started to run? Yes. Okay. And by my calculation, that was three-and-a-half years. So is that the period that you're asking for? I believe the application began to run on May 3, 2005, and he filed his habeas corpus petition on October 30, 2008. Okay. So about three-and-a-half years. Yeah. Okay. Before I get into the legal argument, I just want to introduce my client by way of background. He was 16 years old at the time he was charged. He was born and raised in Mexico in a tribe, a Mixteco tribe. He was not raised learning Spanish or English. He was raised learning Mixteco. He is not literate in any language. He went through apparently two years of some public schooling where he learned some rudimentary Spanish. By all accounts of everyone, both experts and laypeople, they found him difficult to understand. They believed that he was, quote, slow or retarded and was unable to effectively communicate. Mr. Engelhardt, what do we do with the factual finding by the Washington state courts, including the trial court, when a concern was raised as to his ability to understand and competency and so on, that he was, in fact, competent to stand trial and that he did communicate through Spanish language interpreters at the trial? Well, Your Honor, I think that this court needs to assume that, based on that, that he didn't meet that legal standard of being competent to assist his counsel. But Bills v. Clark. What do we do with the AEDPA presumption that attaches to the findings of state courts? Your Honor, I think as to that minimal level of competency, I think that this court needs to presume that he had that minimal level of competency for his ability to assist a trial lawyer who was providing him with a proper interpreter. But the legal standard here is different, based on Bills v. Clark. But your argument is that he's completely illiterate in Spanish. And the problem I'm having is I've got a record that includes a finding by the state courts that he was provided with Spanish language interpreters during his trial and communicated through them with his lawyer and with the court. And AEDPA says that those factual findings are entitled to a presumption of correctness unless you can show by clear and convincing evidence that they're wrong. And what's your clear and convincing evidence to overturn that state factual finding? I'm confused as to whether the court is going to the merits of the issues raised in the AEDPA. I'll tell you where my question is leading to. My concern on this case has to do with due diligence and the lack of evidence that Mr. Lopez-Castillo exercised during the three and a half years that you're asking for equitable tolling. Part of the due diligence inquiry, it seems to me, has to turn on whether or not he could, in fact, communicate in some form with people who spoke Spanish. Your argument is that he only speaks or understands mixteco. But I've got a state court finding suggesting that he's more literate than what you're arguing. Your Honor, I don't think it's clear to what extent he understood or understands today his rights or understands how to, in the context of a virtual, complete lack of understanding of what his rights are. That may be a counsel. Could I just bring you maybe back to the focus? I take your point that the evaluations in state court were on the presumption he had a lawyer. So he had the question there was could he communicate to someone who was versed in the legal system and was there to assist him. Bill's, the recent case that we asked the parties to be aware of and be able to talk about, we did talk about that issue of ability to communicate or to seek assistance. That was in a mental incapacity context, which I don't think has been established here, but the ability to communicate and make known his need for assistance in the context of someone who was in a prison setting is what we're focused on here. And as Judge Tallman has raised, where's the evidence that even though the context was slightly different in the state court, there are those findings that he could communicate in rudimentary Spanish. It's not that your declaration said he's not fluent in Spanish. Well, that may be true, but that doesn't mean he can't communicate with jailhouse lawyers or whatever to make known his interest in pursuing his remedies. So where's the evidence that over that period of time he made an effort to get some kind of assistance? I think the evidence is in the declarations that were submitted, both his declarations, my declaration submitted to the district court, and the declaration of Leopoldo Cardenas, who was the, quote, jailhouse lawyer who eventually did assist him, but said that he did so without any input, without any give and take from Mr. Lopez-Castillo. How do we deal with the attorney bill of costs that, as I understand, the timeline was filed before he ever met or was imprisoned with Mr. Cardenas? That's specifically dealt with in the declarations submitted to the district court, indicating that there was an English-speaking individual who assisted Mr. Lopez-Castillo without any give and take from Mr. Lopez-Castillo. And so they did not have any interaction other than that this person took the legal papers that were sent to him, prepared something for him, asked him in whatever rudimentary way to sign. He signed it, and it was submitted on his behalf. And I think the key language, Your Honor, in Bills v. Clark is the court specifically says, a petitioner's mental impairment, and I submit that this falls within any reasonable definition of mental impairment, might justify equitable tolling if it interferes with the ability to understand the need for assistance, the ability to secure that assistance, or the ability to cooperate with or monitor assistance the petitioner does secure. But he filed six different applications with whatever assistance he was able to procure. And what I didn't see in your declarations is what is missing in the sense of what would he have filed differently than what was actually filed on his behalf if he could have communicated better? Well, he had the individuals who assisted him, as indicated in the declarations, had only paperwork that Mr. Lopez-Castillo happened to be given and retain, or what they could find online. They were unable, for example, to have copies of the transcripts of the trial, copies of the transcripts where Mr. Lopez-Castillo repeatedly asked for a new lawyer, where Mr. Lopez-Castillo is not in court when his lawyer apparently, without any contact with Mr. Lopez-Castillo, waives his right to testify at the trial, which he's been excluded from. All of those things happened on the transcript. But these individuals in the jail, they don't have any of that stuff. Mr. Lopez-Castillo doesn't even know what those things are. So it goes to his ability to understand his need for assistance. I have one question. I'll try to keep it brief because I don't want to get you off your argument. But it seems to me that if he could have said in a prison, in substance, you know, I want a Mixteca translator, if he'd been able to say that, that would have gone a long way. So is his Spanish good enough to just say the word translator in Spanish? His declaration specifically indicates that he asked for, repeatedly asked for, sought out Mixteco interpreters, people that spoke Mixteco to assist him. So how did he seek that out? Like in what language did he ask for that? I can only assume that he did that in Spanish, Your Honor. And so his declaration suggests he asked for that, but the prison wouldn't give him that? Right. Okay. Okay. I think my time is up. It is. I'll give you a minute on rebuttal. I appreciate it. Thank you. May it please the Court. My name is Greg Rosen. I'm an Assistant Attorney General, and I represent the respondent in this matter. This Court should affirm the District Court's decision to deny equitable tolling and to dismiss the habeas petition as time barred. The petitioner fails to meet his burden under either prong of Bills v. Clark to show that he's entitled to equitable tolling. Bills has no applicability to his case because Bills presumes the existence of a mental impairment, and Bills imposes the burden upon the petitioner of a showing, a non-privileged showing of a severe mental impairment during the running of the statute of limitations sufficient that he's entitled to an equitable tolling. Well, it wasn't. I mean, that was the focus of Bills because that was the issue in Bills. Yes, Your Honor. I mean, there are cases of which we cited that went beyond a mental impairment. It's in disability. In this case, language has been a well-recognized one in our circuit long before Bills. Yes, Your Honor. So are you suggesting that the language impediment isn't covered by the Bills standard? No, Your Honor. I was not suggesting that. I was simply addressing the first prong of Bills in terms of the severe mental impairment that this Court imposed in Bills. Okay. And I was reiterating to the Court that in this particular case, the petitioner has not met that burden of making a showing, a non-privileged showing of a severe mental impairment. In fact, the record in this case indicates that he had two competency evaluations. He was shown to be competent in both. The first evaluation noted that he did not meet the criteria for mental retardation, in contrast to counsel's last statement that everyone found him to be retarded. In fact, Gene McConaghy found that he did not meet the criteria for mental retardation, did not exhibit symptoms for mental illness. Counsel, if I could interpose a question here. Yes, Your Honor. To me, the issue of his language problems are more significant than his raw brain power or whether he has a mental impairment. So just on the language issue, if we credit his affidavit, and if we take as true what he said in his affidavit, which I thought we would normally do in this kind of matter, what else is he supposed to do to show diligence if he can't communicate? And he asked for a Mixteca interpreter and didn't get it. What else can he do to show diligence? Well, Your Honor, the second prong of Bills, for example, in terms of diligence, and there are several prongs, and that is the second prong that this Court addressed in Bills, is that when he had the assistance of Mr. Cardenas to assist him to file his personal restraint, in June or July of 2007, and his second state court petition in September of 2007, followed by his federal habeas petition. But speaking first of the first PRP in July of 2007, that PRP raised the same claims as was raised later in his federal habeas petition, and nothing prohibited him from filing a federal habeas petition at that time. Now, Judge Gould, you've asked specifically about diligence as well. In Pace v. DiGiglielmo, the Supreme Court discussed the fact that there was a lack of diligence of, as demonstrated by the five-month period of time between the completion of the petitioner's state court action and when he filed his federal habeas petition. Here, the petitioner's second personal restraint petition, his second state court petition, was dismissed in January of 2008. Nine more months went by before he filed his federal habeas petition in October of 2008. So if five months was recognized by the Supreme Court as not diligent, in terms of respecting the need to file a timely petition, then certainly nine months demonstrates a lack of diligence as well. So what's the evidence that he had sufficient understanding to understand which Bills articulates as one of the grounds that counsel mentioned, the need to understand that there is a statute of limitations? Your Honor, the first thing that he understood is that during his sentencing hearing in the criminal trial, the petitioner agreed to have Spanish interpretation during the sentencing hearing. He was asked, his attorney made a statement at sentencing that he had agreed to have a Spanish interpreter. He would let the court know if he did not understand. And at page four, as I recall, of that sentencing hearing, his attorney turned to him and said, do you understand everything? And he answered in the affirmative. He also had a Spanish interpreter during the course of the two competency evaluations. And obviously a great deal of information was – I'm not following the argument. My question is, where's the evidence that he knew he had a one-year statute of limitations? When was he made aware of that? There's no indication that he was unaware of that time, Your Honor. Why would he be aware of an EDPA violation, statutory statute of limitations? We have cases, I think Mendoza, where the – we sent it back for an evidentiary hearing because the petitioner said, I didn't have access to a library in Spanish. I couldn't get Spanish materials. So I did not know there was a one-year statute of limitations. There are malpractice suits all over the country about lawyers who don't know there's a one-year or two-year or three-year statute of limitations on something. So I'm focused on the statute of limitations. How does he know – how does he understand that the PRP, for example, that was filed on his behalf had – if he just wanted to simply attach that to a federal habeas petition, could have been done but had to be done within one year of a certain date? How would he know that? Well, for example, in his – in answer to your question, Judge Fischer, in his second personal restraint petition, and this is at SCR 296, it states the following, and I'm quoting, Mr. Castillo filed a personal restraint petition, PRP, and I'll skip through the cause numbers. This court dismissed it as a mixed petition without ruling on the merits. This court further declared that Mr. Castillo could be filed any claims that are not time-barred. Mr. Castillo now files this petition raising only the two issues declared by this court as exceptions to RCW 10.73.090, end quote. So that's in English. It is, and it was – It's conceded he does not speak English. Yes, that's correct. So I'm still looking for the evidence that he knew, he understood, that given his language difficulty, he was made aware or could have been made aware of the one-year statute of limitations. He does say in his declaration that he couldn't get anybody to interpret for him in Mixteco. He had the assistance of Mr. Cardenas, who speaks Spanish. Mr. Cardenas filed the federal habeas petition, as I understand it, on Mr. Lopez-Castillo's behalf. After the time had expired. That's right, that's right, but I've already demonstrated that. Where does Mr. Castillo, I mean, or Cardenas, rather, how does he know? Because Mr. Cardenas, as I understand it, has filed habeas petitions himself. So basically we take Cardenas, who says, I couldn't communicate with him, so I just went ahead and did all these things on my own. And so Mr. Cardenas misses the one-year statute of limitations, and Mr. Castillo was never advised about the time deadline. So you think that satisfies the bill's requirement that he be shown to be capable of understanding the need to timely file? The evidence in the record is that Mr. Lopez-Castillo had a rudimentary, if not actually workable understanding of the Spanish language, given that he was able to communicate sufficiently enough with Mr. Cardenas to have two state PRPs and a federal habeas petition filed. I think the evidence on the record suggests that he was aware. He could have been made aware by Mr. Cardenas. If I could follow up on a point raised by Judge Fischer. So how does the government view whether an appellant should have a right to get an evidentiary hearing that would specify? So there would be findings that would be more specific as to what he was able to do in Spanish and what he wasn't? Well, first I would suggest that Shriver v. Landrigan stands for the proposition that if the record refutes the petitioner's factual allegations, the district court is not required to conduct an evidentiary hearing. I would submit that the record in this particular case suggests that the petitioner here did have an understanding of Spanish. Secondly, under this court's holding in Baja v. Ducharme, he failed to develop the factual basis of the claim that he did not understand in the state court. I would suggest under 28 U.S.C. 2254E2, he is barred from an evidentiary hearing on the language difficulties. Okay, thank you. We'd ask that this court affirm the decision of the district court. Thank you. Very quickly, Your Honors. The first declaration of Mr. Lopez-Castillo specifically indicates that he has no understanding prior to my trying to explain to him that there is a federal system and a state system. And that there is a right to a federal review of a state court conviction. He had no understanding of that prior to my explanation of it to him. His subsequent declarations also indicate his lack of understanding of the jury trial system, the right to confront witnesses, the right to testify himself. What would be the fact, if your client got relief of an evidentiary hearing, what would be the facts that you would try to prove in the district court on his behalf to show due diligence? Your Honor, I think it would be important for Mr. Lopez-Castillo to testify. He's subject to cross-examination over his specific efforts that he touches on in his declarations to ask for an interpreter. Didn't the magistrate judge ask specifically for that kind of information? He asked for supplemental briefing, and that's what we provided to him with supplemental declarations, which specified that he did ask for it. But more than that, he said, set forth what evidence he would present through further discovery, expansion of the record, and evidentiary hearing to show he was unable, despite diligent efforts, to procure either legal materials or translation assistance from an inmate, library personnel, or other source. And we responded that it would be testimony of Mr. Lopez-Castillo, Mr. Cardenas, and perhaps a linguistics expert to testify about his ability in the Spanish language to communicate with individuals such as Mr. Cardenas or other individuals there to ask for help and how he might ask for it, how he might know what to ask for, with regard to the federal system, which he's indicated he knew nothing about. Okay. Did you get your question answered? All right. Yeah, I think that answer. Okay. Thank you, Your Honor. Thank you both. We appreciate the argument. Okay. Lopez-Castillo v. Glieb is submitted.
judges: Fisher, Gould, Tallman